# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| FRANK FORREST FLOYD, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV413-084 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

Frank Forrest Floyd, a 21-year-old man suffering from Crohn's disease, applied for a supplemental security income on September 1, 2010, when he was a minor under the age of 18. (Tr. 46.) The claim was denied both initially and upon reconsideration. (*Id.*) An Administrative Law Judge ("ALJ") conducted a hearing and denied benefits. (Tr. 15-35.) The Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) Floyd then filed a complaint for judicial review in this Court, contending that the ALJ erred in reaching his determination. (Doc. 1.)

## I. STANDARD OF REVIEW

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If the Commissioner finds against claimant, affirmance of her decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

To determine whether a child under the age of 18 has met the burden, the Commissioner follows a three-step evaluation process.. At step one, the ALJ must determine whether the child is engaged in substantial and gainful activity. 20 C.F.R. § 416.924(a). At step two, if the child is not engaged in substantial and gainful activity, the ALJ must determine whether the child has an impairment or combination of impairments that is severe. *Id.* At step three, the ALJ must determine whether the child's impairment meets, medically equals, or "functionally equals" a listed impairment. *Id.*; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (listings). To determine whether an impairment "functionally equals" a listing, the ALJ must assess the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for him or herself; and (6) claimant's health and physical well-being. 20 C.F.R. § 416.926a. The claimant must show a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). If a claimant meets a listing outright or can show that his disability

"functionally equals" a listing, he is disabled. 20 C.F.R. § 416.924(a). If not, the child is not disabled. *Id.*

To determine whether an adult has met the burden, the Court looks to a five-step evaluation process. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). If he cannot perform past relevant work, stage five shifts the burden to the

Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Moore*, 478 F. App'x at 624.

## II. ANALYSIS

The ALJ assessed claimant both as a child and an adult. (Tr. 50.) Under step one, applicable to both disability standards, the ALJ found that claimant had not engaged in any substantial gainful activity since the date the application was filed. (*Id.*) At step two, he found that claimant had the "severe" impairments of Crohn's disease, with perianal manifestations, and asthma. (Tr. 51, 60.) At step three, the analysis diverged, though the ALJ ultimately found in both instances that claimant did not have an impairment or combination of impairments that met or medically equaled a step-three listing. (Tr. 53, 62.)

Moving solely into the "adult" portion of the analysis, the ALJ found that claimant retained the following residual functional capacity:

> since attaining age 18, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that claimant can push/pull up to 10 pounds occasionally; stand/walk up to six hours of an eight-hour workday; and sit for up to 6 hours of an eight-hour workday. The claimant should avoid concentrated exposure to heat, humidity, cold, gases, fumes, and unprotected heights and other hazards.

(Tr. 63.) Based upon that RFC, the ALJ claimant retained the ability to work in several unskilled or semi-skilled light work professions. (Tr. 65-66.) Accordingly, the ALJ found that claimant is not disabled. (Tr. 66.)

Claimant raises two related claims, both of which stem from a teacher report the ALJ relied upon in assessing the six domains of functioning at step-three for the children's assessment. There, the ALJ noted:

> Jeff Goff, South Effingham High School Retention/Tran Specialist, and John Cook, the claimant's social studies teacher, completed a teacher questionnaire on October 1, 2010 (Exhibit 9F). In the questionnaire, they opined that claimant had no limitations in the domains of "Acquiring and Using Information", "Attending and Completing Tasks", "Interacting and Relating with Others", "Moving about and Manipulating Objects", and "Caring for Himself". Although the questionnaire notes frequent absenteeism due to Crohn's flares, the claimant is noted as being a bright, well-adjusted, model student who does not need additional help. In "Health and Physical Well-Being", the questionnaire noted that the claimant had two to three Crohn's flares per week, and he was being treated every five weeks with Remica[de]. The undersigned affords the opinions expressed in the teacher's questionnaire great weight because these gentlemen interacted extensively with claimant over a period of several school years, placing them in an excellent position to evaluated [sic] the claimant's functioning in the above noted domains.

(Tr. 64.)

Claimant contends that it was error for the ALJ to assign great weight to the teachers' opinions as to the domains of functioning while

6

failing to address their absenteeism assertion. (Doc. 15 at 8-10.) He insists that the ALJ should have addressed the assertion in making his credibility finding since it supported claimant's position on the matter. (*Id.* at 8-9.) He also claims that the ALJ's failure to explicitly discuss the absenteeism portion of the report, along with claimant's Rehabilitation Act § 504 education accommodation plan, "created an evidentiary gap" that resulted in unfairness or prejudice.[1] (*Id.* at 9-10.)

When a claimant attempts to establish disability through his or her own testimony of subjective pain, the "pain standard" applies. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005). The pain standard demands:

---

[1] Claimant also asserts that the decision is not supported by substantial evidence of record, but he makes no argument in support. In its entirety:

> Review of a disability decision is based on whether there was substantial evidence to support the Secretary's decision. 42 U.S.C. Sec. 405(g) (1982). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.; *see Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).
>
> Here, there is no substantial evidence that Claimant can engage in any work activity on a sustained basis. The

(Doc. 15 at 8 (The last paragraph ends with that dangling "The.") The briefing order in this case directed the parties to make arguments supported by transcript citations and legal authority (doc. 14 at 1-2), and required plaintiff to "set forth [his] contentions . . . with respect to the issues presented and the reasons therefor." (*Id.* at 4.) Claimant has not complied with that directive, and the Court cannot do so on his behalf. Hence, this issue is waived.

7

(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ decides to discredit the claimant's testimony, he or she must "articulate explicit and adequate reasons" for doing so. *Id.* The ALJ's finding as to credibility, however, need not be explicit. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The implication, though, "must be obvious to the reviewing court." *Id.*

Claimant insisted before the ALJ that he would be hard pressed to work within the weeks surrounding his Remicade[2] infusion dates, which are set to occur every five to six weeks. (Tr. 82-83, 89.) His symptoms begin to return before the infusion, and he is utterly without energy in the days after. (*Id.*) He also reported that his disease would flare up at

---

[2] Remicade is a periodic infusion that is used to treat several immunological disorders, including rheumatoid arthritis, Crohn's, psoriasis, and ulcerative colitis. U.S. National Library of Medicine, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010708 (last visited May 5, 2014).

8

any time if he stood for more than 15 minutes or walked for 10 minutes. (Tr. 90.) He claimed constant pain and anal leakage, and he reported multiple bowel movements daily. (Tr. 92.) According to claimant, the only thing he can do to ease the pain associated with the bowel movements is to take long baths several times daily. (*Id.*)

The ALJ made two separate credibility determinations, one for the childhood portion of Floyd's claim and the other for the adult portion. They are, however, substantially similar, so the Court will address them as a single unit. He found the medical evidence of record reflected that claimant's Crohn's disease was "largely resolved" by Remicade treatment. (Tr. 54.) That assessment was overwhelmingly supported by the medical evidence of record. (*See* tr. 556 (before beginning Crohn's treatment, a colonoscopy was completely normal, though the perianal rash was likely an external Crohn's manifestation); tr. 620 (August 19, 2009 treatment notes stating that claimant was "reasonably well," had responded well to Remicade, had one bowel movement daily, but he still experienced a "weepy" perianal area with a "scant" amount of bleeding); tr. 1142 (this appears to be the last major Crohn's episode; admitted to hospital on November 16, 2010 but released to outpatient care); tr. 1148

9

(when admitted for a Remicade infusion in June 2011, he noted that he was eating well and doing quite well, in addition, the doctor noted that claimant was "growing well"); tr. 1205 (August 3, 2011 treatment notes showing that disease is "largely resolved" by Remicade"); tr. 1203 (September 1, 2011 treatment notes showing that claimant, now a freshman in college, was doing fairly well, has had "some" perianal pain, and an "occasional loose stool" with "[m]inimal abdominal pain"); tr. 1188 (November 3, 2011 treatment notes showing that while claimant had had a little bit of a flare, he only had mild cramping, stools 4-5 times a day, with no reported perianal pain and no blood in the stool); tr. 1234 (non-examining state medical consultant noting on December 29, 2011 that Remicade seems to be helping, that there has been no weight loss and that claimant reported no significant abdominal pain or diarrhea in his more recent treatment notes).)

The ALJ also noted that despite claimant's disease he was able to graduate with a low B average from high school, achieved over 400 in each SAT section (a total SAT score of 1320 out of a possible 2400 (tr. 250)), and had started attending college, though he later withdrew. (Tr. 55.) His assertions of weakness and frailty were undermined by his

admission to his primary care physician that he was taking a bodybuilding supplement. (Tr. 55.) Additionally, he admitted during the hearing that he attended a water park where his girlfriend works and that he had injured his arm while boxing with a friend at home. (*Id.*; *see* tr. 1114 (taking "Jack3d" pre-workout supplement); tr. 1157 (left elbow injury from wrestling with a friend).) Claimant was able to stand and walk for hours in lines at a water park, do yard work, shop, do laundry, and roughhouse with friends. (Tr. 55, 61.) Given Floyd's apparent activity level and intellectual capacity, the ALJ afforded little weight to the degree of impairment claimant alleged due to his Crohn's symptoms.

Claimant contends that the ALJ erred in his credibility determination since he failed to explicitly address the portion of the teachers' domains of functioning report that noted his frequent absences. (Doc. 15 at 8-9.) He makes much of the fact that the ALJ assigned "great weight" to the report,[3] yet failed to "address the evidence in those records that backed up the Claimant's assertions about how much time

---

[3] He found that claimant was not impacted in five of the six domains of functioning, and he suffered less than "marked" limitations in the last domain, "Health and Physical Well-Being." (Tr. 55; 60.)

11

he would miss from any work attempts because of the Crohn's symptoms." (*Id.* at 9.)

The ALJ accorded great weight to the teachers' domains of functioning assessment, not their reports of Floyd's absenteeism. (Tr. 64 ("The undersigned affords the opinions expressed in the teacher's questionnaire great weight because these gentlemen interacted extensively with claimant over a period of several school years, *placing them in an excellent position to evaluate[] the claimant's functioning in the above noted domains.*) (emphasis added).) While they were in the best position to make the domains of functioning assessment, they were *not* in an "excellent position" to evaluate claimant's self-proclaimed medical symptoms. The report was drafted by educators, not medical sources trained to discern whether claimant was experiencing a serious medical episode or simply relying upon his illness as an excuse to leave school early.

The ALJ needed to consider their report, and he did. *See Bell v. Colvin*, 2014 WL 1345309 at *5 (M.D. Ala. Apr. 4, 2014) (an ALJ need not assign any weight to non-medical sources, though he must consider the evidence in reaching his decision). There was no need for him to

discount explicitly the absenteeism assertion, since it was informed by claimant's subjective complaints, the teachers are not qualified medical sources, and the medical evidence of record shows that the disease is well-managed by Remicade. *E.g. Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the reviewing court to determine the ALJ considered the evidence). Ample record evidence supports the ALJ's decision to discredit claimant's subjective complaints. That ends the matter. And even if he should have addressed the report head-on, any error in failing to do so should be deemed harmless. *E.g., Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 746 n.3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision").[4]

Claimant's second claim, that the ALJ erred by failing to address the domains of functioning report and § 504 education plan in the broader context of his capacity to engage in substantial gainful activity,

---

[4] So long as this Court is not forced to speculate, the ALJ's ruling can otherwise be upheld. *Malave v. Colvin*, 2014 WL 895443 at * 4 (S.D. Ga. Mar. 6, 2014).

13

fails for the same reasons. (Doc. 15 at 9-10.) The report was not from qualified medical sources, and it reflects claimant's complaints, not a medically supported justification for frequent absenteeism. And, as with the credibility claim, the Court is satisfied that even if the ALJ should have addressed those documents in more detail, his error was, at most, harmless.

## III. CONCLUSION

While claimant is correct that there is a "gap" in the decision, it is clear from the record that the ALJ implicitly concluded that the medical evidence of record did not suggest a need for constant absenteeism, that claimant's testimony to the contrary was not credible, and that claimant could therefore maintain employment. His finding is supported by substantial evidence of record. The ALJ's denial of benefits is therefore supported by substantial evidence of record. Consequently, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this 8TH day of May, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14